# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAF-T-GARD INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| VANGUARD ENERGY SERVICES, LLC, ) | Case No. 12 C 3671 |
| VANGUARD ENERGY, LLC, and ) | |
| SEMINOLE ENTERGY SERVICES, LLC ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Saf-T-Gard International ("Saf-T-Gard") brings a purported class action against Vanguard Energy Services, LLC ("VES"), Vanguard Energy, LLC ("Vanguard"), and Seminole Energy Services, LLC ("Seminole"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, related to the transmission of unsolicited faxes.[1] Now before the court is Saf-T-Gard's motion for class certification pursuant to Federal Rule of Civil Procedure 23. For the reasons explained below, the court finds that the proposed class meets the requirements of Rule 23(a) and (b)(3). The court, however, amends the class definition to be compatible with the allegations in the First Amended Complaint.

---

[1] Saf-T-Gard also brings a claim for violations of the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. 505/2, and a state-law conversion claim, but it does not seek class certification of those claims at this time. The court will not address whether class certification of those claims would be appropriate.

# I. BACKGROUND

Saf-T-Gard is a corporation located in Illinois that maintains fax equipment. VES is an Oklahoma limited liability corporation. Vanguard and Seminole are VES's parent companies and managing members. According to the allegations in the First Amended Complaint, on or about March 26, 2012, VES sent an unsolicited fax to Saf-T-Gard's fax machine. The fax advertisement promoted the sale of gas and electricity as well as consultant and broker services for additional gas and electric providers. VES offered to review the recipient's natural gas and electric accounts at no cost and without obligation and offered a monthly energy market update report at no cost. Saf-T-Gard alleges that it had not given VES prior express permission to send advertisements to it within eighteen months of the receipt of the fax, nor did Saf-T-Gard have a prior business relationship with any of the defendants. The fax contained no "opt-out" notice or telephone number for removal from VES's mailing list.

In its answer to the First Amended Complaint, VES admits that one of its employees sent a fax to Saf-T-Gard. (VES's Answer ¶ 8, ECF No. 24.) VES states, "On information and belief, an employee or employees of VES had previously communicated with an employee or employees at Saf-T-Gard. Based on information and belief, Saf-T-Gard provided information to VES regarding its natural gas contract and advised VES that it would provide VES with an opportunity to bid on a future contract." (*Id.* ¶ 9.) VES disputes Saf-T-Gard's assertions that the fax was unsolicited, that Saf-T-Gard did not give VES permission to send it fax advertisements, and that Saf-T-Gard had no prior business relationship with VES. In its response to Saf-T-Gard's requests to admit, VES "admits that VES or someone on behalf of VES has sent more than 100 facsimiles that provide information relating to its services but notes that this request does not address whether the sender . . . had permission from or a business relationship with the

recipient." (Pl.'s Mem. in Supp. Class Cert. Ex D ¶ 11, ECF No. 31-4.)  VES denies that it sent more than 500 faxes.  (Id. ¶ 12.)

Section 227(b)(1)(C) of the TCPA states:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

. . . .

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through--

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)

47 U.S.C. § 227(b)(1)(C).

In count I of the First Amended Complaint, Saf-T-Gard alleges that the defendants violated § 227(b)(1)(C) of the TCPA by transmitting unsolicited fax advertisements to the fax machines of Saf-T-Gard and the putative class members, or by having those faxes sent on their behalf.  Saf-T-Gard seeks to bring this claim on behalf of a class of

(a) all persons or entities (b) who, on or after May 14, 2008 and on or before June 4, 2012 (c) were sent faxes by or on behalf of defendants promoting their goods or services for sale (d) and who were not provided an "opt out" notice as described in 47 U.S.C. § 227.[2]

Vanguard and Seminole moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Saf-T-Gard failed to allege facts showing that Vanguard or Seminole sent an unsolicited fax or facts sufficient to establish the liability of Vanguard and Seminole as parent companies of VES. On November 28, 2012, the court denied the motion, finding that Saf-T-Gard had alleged facts that supported the inference that VES had engaged in marketing of energy services, including sending fax advertisements, on behalf of its parent companies, and that alternatively, the parent companies could plausibly be held liable under an agency theory. (Order Nov. 28, 2012, ECF No. 36.)

## II. LEGAL STANDARD FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 allows class certification when the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Wal-Mart, Inc. v. Dukes*, ——U.S. ——, 131 S. Ct. 2541, 2548 (2011). The court need not accept the allegations in the complaint as true. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Under *Wal-Mart*, the party seeking class certification must demonstrate with proof, at the class-certification stage, that the requirements of Rule 23 are satisfied. The court must engage in a "rigorous analysis" touching on the merits of the underlying claim. *Id*. at 2551-52.

Rule 23(a) lists the following prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

---

[2] The defendants argue that Saf-T-Gard limited the class definition in its complaint to "persons with Illinois numbers," but they are quoting the state-law claims in the complaint. (*See* First Am. Compl. ¶ 52, ECF No. 23.) The TCPA claims are brought on behalf of "all persons" and were not limited to those with Illinois numbers. (*Id.* ¶ 32.) Although the memorandum adds the words "or entities," the proposed class definition in the memorandum is otherwise identical to that in the complaint.

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Wal-Mart*, 131 S. Ct. at 2548. These four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 131 S. Ct. at 2550 (internal quotation marks omitted).

Plaintiffs request certification pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant to this inquiry are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

### III. ANALYSIS

**A. Rule 23(a)**

1. Numerosity

Rule 24(a)(1) requires that the proposed class be large enough to make joinder impracticable. Here, Saf-T-Gard asserts that there are at least 100 class members. This is based on VES's admission that it sent over 100 faxes and VES's fax log from October 2011, which show that the company sent hundreds of faxes. (Pl.'s Reply Supp. Class Cert. Ex. 1-2, ECF No. 33.) The court finds the size of the proposed class adequate to satisfy the numerosity requirement. *See Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 335 (N.D. Ill. 2006) ("[C]ourts

in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."). Although the defendants argue that Saf-T-Gard has not shown that these faxes were unsolicited, that is an argument that the class members' TCPA claims fail on the merits. *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("Under [Rule 23], certification is largely independent of the merits . . ., and a certified class can go down in flames on the merits."). Even if it eventually proves true that some persons who were sent faxes do not fit the class member definition, or that VES sent no unsolicited faxes, Saf-T-Gard has presented sufficient evidence to meet the numerosity requirement.

2. Commonality

The commonality inquiry focuses on whether a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551. It is similar to the predominance requirement of Rule 23(b)(3), but "the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). As Saf-T-Gard must prove not only commonality but predominance to prevail on its motion, the court will elaborate on the question of commonality below, as part of the Rule 23(b)(3) analysis.

3. Typicality

Typicality requires that the named plaintiff's claims be typical of those of the class at large, rather than premised on varying practices or diverging courses of conduct by the defendants. *See Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596-98 (7th Cir. 1993). Here, Saf-T-Gard alleges that all of the plaintiffs were subject to the same marketing practice by the defendants. The court finds that Saf-T-Gard's claims are typical of the class, to the extent that all the class members' claims are based on the legal theory that the defendants sent them unsolicited faxes. The defendants press the argument that Saf-T-Gard has not demonstrated that

the faxes were unsolicited, but again, that is an argument that the TCPA claims fail on their merits, and it rests on questions of fact that are currently in dispute as to whether the fax recipients authorized VES to send them information.

   4. Adequacy

The adequacy factor requires that the named plaintiff's claims and interests not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel be experienced and competent. *Retired Chi. Police Ass'n*, 7 F.3d at 598. Defendants take no issue with the qualifications of Saf-T-Gard's counsel, but they argue that Saf-T-Gard's routine participation in TCPA litigation makes it an unsuitable class representative. The Seventh Circuit has rejected the argument that being a repeat filer of TCPA claims undermines a named plaintiff's adequacy. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) ("[I]t's not unlawful to be a professional class action plaintiff. . . . Indeed, an experienced plaintiff in such an action may be able to ensure that class counsel act as faithful agents of the class.") (internal citation omitted). The court concludes that the adequacy requirement is met because the named plaintiff has participated actively in the case, class counsel has significant experience bringing class-action claims under the TCPA, and there is no indication that Saf-T-Gard's interests are antagonistic to those of other class members.

**B. Rule 23(b)(3)**

Under Rule 23(b)(3), the court may certify a class only if (1) questions of law or fact common to the class members predominate over questions affecting individual class members, and (2) a class action is superior to other methods of adjudicating the claims.

   1. Predominance

The Seventh Circuit recently explained the predominance requirement of Rule 23(b)(3):

> Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication. Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (internal citations, alterations, and quotation marks omitted). The more common issues predominate, the more desirable a class-action lawsuit will be. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). The fact that individual assessment of damages will be necessary should plaintiffs prevail does not preclude a finding that common issues predominate. *See Wal-Mart*, 131 S. Ct. at 2558 (stating that it is "clear that individualized monetary claims belong in Rule 23(b)(3)").

In this case, Saf-T-Gard argues that questions of law and fact common to the class predominate over individualized questions. These common issues include whether Vanguard and Seminole may be held liable for faxes sent by VES, and whether the defendants' actions were "willful or knowing." The court notes that other common questions are whether VES sought and received consent from the recipients of its faxes, and whether the materials sent by VES to class members actually constituted fax advertisements, or whether, as defendants contend, they were "personalized letters." (Defs.' Resp. Opp. Class Cert. 1, ECF No. 32.)

The court notes that in some cases, the need for "mini trials" as to the issues of consent and previous business relationships have rendered class certification inappropriate. For example, a fellow district court held that individualized questions predominated in a case where the defendant "introduced evidence that it elicited consent from every recipient that was not already

a customer." *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011). Based on this evidence, the court feared "it would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time." *Id.* Here, however, the defendants have not produced evidence of that nature. The only evidence before the court consists of VES's responses to Saf-T-Gard's discovery requests. VES states that its representative spoke "with a representative of Saf-T-Gard regarding its then-current energy contract and the opportunity to bid on a future contract. Additionally, a representative spoke with a Saf-T-Gard employee on another occasion and that employee directed him to Mr. Eddie Murad. VES admits that an employee of VES sent [a fax] to the facsimile number listed on Saf-T-Gard's website." (Defs.' Resp. Opp. Class Cert. Ex. 1 ¶ 16, ECF No. 32-1.) Unlike the evidence produced in *G.M. Sign*, this response does nothing to establish whether Saf-T-Gard actually consented to receipt of the fax, and it suggests that the key inquiry will be the manner in which VES developed its fax recipient list, not the nature of the relationship between VES and each putative plaintiff. That question is subject to generalized proof.

Although this case does present individual questions as to the content of the faxes the individual entities received and whether the faxes were solicited, the court concludes that, based on the evidence presently before it, common issues predominate. Other district courts have held that common issues predominate in TCPA cases even where some recipients may have given permission to the defendant to send them faxes. *See, e.g.*, *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 337 (E.D. Wis. 2012) ("The individual issues . . . relate to the need to determine whether some of the recipients gave permission to receive the faxes prior to transmission or whether individual plaintiffs had an established business relationship with the

defendant . . . . However, such issues are minor and can certainly be handled within the framework of a class action."); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011).

    2. Superiority

The court also considers the Rule 23(b)(3) factors in evaluating whether a class action is a superior method to adjudicate the claims at issue: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Courts in this district have held that proceeding as a class is a superior method of adjudicating TCPA violations, and that Congress did not expressly preclude class complaints under the TCPA. *See, e.g.*, *Reliable Money Order*, 281 F.R.D. at 339; *Bridgeview*, 2011 WL 4628744, at *6. Here, individual plaintiffs would be unlikely to pursue an action on their own, given the fairly small potential for individual recovery. There is no indication that other class members have commenced litigation against the defendants, and managing the class action does not appear to present any special difficulties. The court finds that a class action is the superior method for the adjudication of the class members' claims.

**C. Class Definition**

The class definition proposed by Saf-T-Gard includes no requirement of receipt of an "unsolicited" fax; it would include recipients that consented to the receipt of a fax advertisement. Saf-T-Gard argues that a plaintiff can prevail on a TCPA claim even if a fax was not unsolicited if the fax did not contain the "opt-out" language mentioned in § 227(b)(1)(C)(iii) and 47 C.F.R.

10

§ 64.1200(a)(3)(iv).[3] The court is skeptical as to whether that is true. *See Nack v. Walburg*, No. 4:10 CV 00478 AGF, 2011 WL 310249, at *5 (E.D. Mo. Jan. 28, 2011) ("Reviewing the regulation as a whole, the provision in question, 47 C.F.R. § 64.1200(a)(3)(iv), purports, on its face, to apply only to unsolicited faxes.").

Regardless of whether the theory is viable, it is not the theory asserted in the complaint. In its memorandum in support of class certification, Saf-T-Gard argues that defendants are liable for *both* unsolicited faxes and for faxes sent with express permission if the latter did not include opt-out notices. But in count I of the First Amended Complaint, the only TCPA count, Saf-T-Gard refers repeatedly and exclusively to unsolicited faxes, stating: "Section 227(b)(1)(c) of the TCPA makes it unlawful to send an *unsolicited* advertisement to a telephone facsimile machine;" "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the (TCPA's) rule banning *unsolicited* facsimile advertisements;" "Defendants violated the TCPA 47 U.S.C. § 227(b)(1)(c) by directing the transmission of *unsolicited* advertisements;" and "Plaintiff and each class member suffered damages as a result of receipt of the *unsolicited* faxes." (First Am. Compl. ¶¶ 25, 26, 29, 30.) Nowhere in the TCPA count of the complaint does Saf-T-Gard allege that defendants sent faxes with the express permission of the recipient that did not contain an opt-out notice.

Certification of a class including class members who suffered an injury different from the injuries averred in the complaint would violate Rule 23(a)'s typicality requirement, because the claims of the named plaintiff would not be typical of those of the class. *See Vega v. T-Mobile*

---

[3] The regulation states: "(a) No person or entity may: . . . . (3) Use a telephone facsimile machine . . . to send an unsolicited advertisement to a telephone facsimile machine, unless-- . . . . (iv) A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(3)(iii) of this section." Section 64.1200(a)(3)(iii) provides that the notice must "inform[] the recipient of the ability and means to avoid future unsolicited advertisements."

*USA, Inc.*, 564 F.3d 1256, 1275-76 (11th Cir. 2009). As the Supreme Court has stated, the purpose of Rule 23 is to "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 131 S. Ct. at 2550.

A motion for class certification cannot operate as a de facto amendment of a complaint. *Bridgeview*, 2011 WL 4628744, at *2; *Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989); *Ridings v. Canadian Imperial Bank*, 94 F.R.D. 147 (N.D. Ill. 1982). Where the motion for class certification differs from the complaint, courts have certified classes based on the complaint and allowed the plaintiff to move to amend the complaint. This court will adopt that approach; it will amend the class definition to be consistent with the allegations in the First Amended Complaint by including the word "unsolicited." The following class is certified:

> (a) all persons or entities (b) who, on or after May 14, 2008 and on or before June 4, 2012 (c) were sent unsolicited faxes by or on behalf of defendants promoting their goods or services for sale (d) and who were not provided an "opt out" notice as described in 47 U.S.C. § 227.

Should Saf-T-Gard wish to press its theory that opt-out notices are required even when a fax is not unsolicited, it must move to amend the complaint and the class definition.

### IV. CONCLUSION

Saf-T-Gard's motion to certify a class is granted. The court appoints Saf-T-Gard as class representative and Keogh Law, Ltd. as class counsel.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 6, 2012