**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAF-T-GARD INTERNATIONAL, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-3671 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| VANGUARD ENERGY SERVICES LLC, ) | |
| VANGUARD ENERGY LLC AND ) | |
| SEMINOLE ENERGY SERVICES, LLC. ) | JURY DEMAND |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Saf-T-Gard International, Inc. individually and as representative of a Class of similarly situated persons, by Class counsel respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which this Court preliminarily approved on August 7, 2013. Doc. 58.

The Court is advised that subsequent to the entry of the preliminary approval order, 82 notices of settlement were sent via U.S. first class mail. The affidavit of the claims administrator was filed on August 30, 2013. Doc. 59. There were no requests for exclusion and no objections submitted by Class members. Doc.61.

**I.  OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT**

Saf-T-Gard filed a Class Action Complaint against Defendants on May 14, 2012 and a First Amended Class Action Complaint against Defendants on July 18, 2012, both alleging that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. §227, ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2, and Illinois common law (conversion) by

sending Plaintiff and the class members unsolicited facsimile advertisements of their services.

The TCPA and implementing Federal Communications Commission regulations (Count I) make it unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

On December 6, 2012, the Court granted Saf-T-Gard's motion for class certification and certified the following class:

> (a) all persons or entities (b) who, on or after May 14, 2008 and on or before June 4, 2012 (c) were sent unsolicited faxes by or on behalf of defendants promoting their goods or services for sale (d) and who were not provided an "opt out" notice as described in 47 U.S.C. § 227. Doc. 38.

On February 15, 2012, the Court denied Plaintiff's motion to compel discovery regarding faxes sent by defendant Seminole Energy Services, L.L.C. ("Seminole") and ruled that "the class definition is properly understood to encompass persons who received unsolicited faxes sent *by* VES, *on behalf of* VES, Vanguard and/or Seminole."

With that understanding, Plaintiff diligently pursued the discovery necessary to identify the class members and prosecute the class claims. Discovery has shown that defendant Vanguard Energy Services ("VES") sent a total of 119 potentially unsolicited facsimile advertisements to a total of 82 persons/entities during the relevant time period. Discovery has not shown that any such faxes were sent by Seminole or Vanguard Energy, L.L.C. ("Vanguard") on behalf of VES during the relevant time period.

The parties reached a settlement after arms length negotiations where Defendants have agreed to establish a common fund in the amount of $59,500.00 to make a payment of $500.00 for

each facsimile sent to the class members. Assuming the Court awards the total requested attorney's fees and costs of $19,635.00, each class member would receive $335.00 *per facsimile* without any requirement to submit a claim form. *Appendix 1*

Separate and apart from the above relief, Defendants will pay Settlement Administration Costs and a class representative incentive award to Plaintiff in an amount to be determined by the Court, but not to exceed $5,000.

Counsel for plaintiff has reviewed and analyzed the legal and factual issues presented in this action, the information provided by defendants and third parties in discovery, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. Based on the review and analysis, and after arms-length negotiations with counsel for defendant, plaintiff entered into the Settlement Agreement.

As demonstrated below, the Agreement is ripe for consideration and final approval.

## II.     THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

### A.     The Preliminary Approval Order.

On August 7, 2013, this Court entered an order granting preliminary approval of the Agreement reached between the parties. Doc. 58. In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Order further established a procedural framework for the final approval of the settlement. The Order required the parties to cause notice certified by the Court to be mailed and faxed to the members of the Class, set deadlines and

procedures for submission of claims, requests for exclusion, and objections to the settlement, and set November 12, 2013 for the final approval hearing.

### B. The Sending of Class Notice.

Subsequent to the entry of the preliminary approval order, notice of settlement was sent via U.S. first class mail to each of the 82 class members. The affidavit of the claims administrator was filed on August 30, 2013. Doc. 59. There were no requests for exclusion and no objections submitted by Class members. Doc. 61 Once again, there was no claim form requirement, so every class member will be mailed a check upon final approval.

### C. The Value of the Settlement.

This Court has previously considered the terms of the settlement in granting preliminary approval of the Agreement. Pursuant to the Settlement Agreement, and subject to court approval, defendant will create a common fund of $59,500.00, to make a payment of $500.00 for each facsimile sent to the class members. Assuming the Court awards the total requested attorney's fees and costs of $19,635.00, each class member would receive $335.00 *per facsimile* without any requirement to submit a claim form. *Appendix 1*.

Separate and apart from the above relief, Defendants will pay Settlement Administration Costs and a class representative incentive award to Plaintiff in an amount to be determined by the Court, but not to exceed $5,000. *Id*.

### D. No Objections Or Exclusions Were Received.

No class members have elected to be excluded from the Class, and no Class member has objected to the settlement. This should be viewed as an endorsement of the settlement by the Class.

### III. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

On December 6, 2012, the Court found the class satisfies all the requirements of Rule 23 when it granted plaintiff's motion for class certification, which certified the following class:

> (a) all persons or entities (b) who, on or after May 14, 2008 and on or before June 4, 2012 (c) were sent unsolicited faxes by or on behalf of defendants promoting their goods or services for sale (d) and who were not provided an "opt out" notice as described in 47 U.S.C. § 227. Doc. 38.

**A.      The Standard For Granting Final Approval To The Class Action Settlement.**

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621. This determination was satisfied during the contested class certification briefing and order.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit recognizes, courts generally favor settlements of class actions:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, "'there is an overriding public interest in favor of

settlement.'" Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of School Directors of the City of Milwaukee*, 616 F. 2d 305, 312-13 (7th Cir.1980)(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The Court considers the following six factors in making this determination:

1. The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2. The complexity, length, and expense of continued litigation;

3. The amount of opposition to the settlement among class members;

4. The presence of collusion in gaining a settlement;

5. The stage of the proceedings; and

6. The amount of discovery completed.

*GE Capital* at 1082. (citing *Donovan v. Estate of Fitzsimmons*, 778 F. 2d 298, 308 (7th Cir. 1985)); *Synfuel Techs., Inc.,* 463 F. 3d at 653; *In re General Motors Corp. Engine Interchange Litig.,* 594 F. 2d 1106, 1132 (7th Cir.1979) (citations omitted); *Isby v. Bayh,* 75 F. 3d 1191, 1199 (7th Cir.1996). Of these considerations, the first is most important. *Synfuel Techs., Inc.,* 463 F. 3d at 653. The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

**All Of The Factors Weigh In Favor Of Final Approval**

      **A.    The $500 Cash Provides Significant Benefits To The Settlement Class And The Release Is Narrow.**

In a TCPA case, each class member would be entitled to $500 per call and up to $1,500 if they can prove a willful violation of the Act and the Court determines that treble damages are warranted. While plaintiff submits that it has a strong claim, plaintiff recognizes that defendant has defenses to the claim. The value of the program is $500.00 per facsimile and if the class member received multiple faxes, it would receive $500 for each, which is 100% of the statutory damages putting aside the issue of treble damages. *Goldsmith,* at *5 (approving settlement with a monetary fund representing a portion of the damages that could reasonably have been proven for the class).

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor.

The settlement satisfies the third *GE Capital* factor because no Class member has excluded themselves from the settlement and no Class member has objected to the settlement.

      **b.    The Settlement Resulted From Extensive Arms-Length Negotiations**

As a leading treatise on class action jurisprudence explains, "…decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg, §11.42.

Settlement was reached after the discovery identifying the number of class members, which involved the contested discovery motion referenced above. Settlement was not reached until after plaintiff prevailed on class certification and after the Court denied plaintiff's motion to compel.

The significant economic benefit to the Settlement Class, coupled with the narrow release, demonstrate that the settlement is more than fair, reasonable and adequate.

Given the stage of proceedings, the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

B.     **The Notice To Class Members Is Adequate**

Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth) § 21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950).

The Notice sent to class members was clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. *Appendix 1* at *Exhibit C*.   The Notice contained all of the information required by Rule 23, such as the nature of the action; the class definition; summary of the class claims and defenses; the amount paid for a claim; the potential class representative fee and attorneys' fees and costs; ability to enter an appearance; exclusion rights; objection rights and binding effect of a class judgment on members under Rule 23.

 The Claims Administrator mailed, by first class mail, the Class Notice to all 82 class

members. Doc 59

The notice scheme is consistent with the due process requirements incorporated in Rule 23(c)(2)(B). Rule 23's advisory committee note states that the "mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed. R. Civ. P. 23(d)(2) advisory committee's note. (*citing*, *Mullane*, 339 U.S. 306 (additional citations omitted).

## IV.     FINAL APPROVAL ORDER

The parties have agreed to the Final Approval Order attached as Exhibit B to the Settlement Agreement that is attached as *Appendix 1*. A copy of the proposed final approval order is also attached hereto as *Appendix 2* for the convenience of the Court. The release that is incorporated into the Final Approval Order is narrowly tailored to claims that "arise out of, are based upon, or are related to the conduct alleged in the Lawsuit."

## V.     THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Pursuant to the Agreement, Class Counsel requests approval of payment of attorney's fees and costs in the amount of $19,635.00, which equals less than 33% of the value of the settlement because it includes costs.

Plaintiff's counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the percentage of fund method. *In re Synthroid Mktg. Litig.*, 264 F. 3d 712 (7th Cir. 2001).

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van*

*Gemert,* 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Gaskill v. Gordon,* 160 F. 3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank, N.A.,* 34 F. 3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.,* 962 F. 2d 566, 572 (7th Cir. 1992) *("Cont'l I"); In re Cont'l Ill. Sec. Litig.,* 985 F. 2d 867, 868 (7th Cir. 1993) *("Cont'l II")*; *Kendrick v. Atcor, Inc.,* 1988 U.S. Dist. LEXIS 8389 (N.D. Ill. 1988).

In *Taubenfeld v. Aon Corp.,* 415 F. 3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> [W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Although it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante,* courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions. *Id.* at 599 (citation omitted). In affirming an award of fees equaling 30% of the $7.25 million settlement fund plus expenses, the *Aon* court considered, among other things, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case.

*Id.* at 600. In considering a fee request, the court must do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d at 718. As discussed below, the requested fee, which includes expenses in this case and excludes the value of the non monetary benefits of the settlement, is the most appropriate method to "recreate the market" given the nature and scope of the Litigation, the time spent and expenses incurred in its prosecution and the substantial result achieved for the Class.

"'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage

10

of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market." *Cooper v. IBM Pers. Pension Plan,* No. 99-829, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005). The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).

In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998). If this case were an individual case, the customary fee arrangement would be contingent, on the percentage basis, and in the range of 331/3% to 40% of the recovery. *See Kirchoff* at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Limited Partnership v. Price Waterhouse, LLP,* 2001 WL 1568856 at *4 (N.D. Ill 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding class counsel the requested one-third of the common fund); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40–41 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed upon vary, with one-third being particularly common.").

This District has noted that "the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases." *See Goldsmith v. Tech.*

*Solutions Co.,* 1995 U.S. Dist. LEXIS 15093, *24 (N.D. Ill. 1995) (other citations omitted) (approving 33.33% fee award), *citing Cont'l Ill. II,* 985 F. 2d 867. This District has also recognized that a fee award of "33 1/3% is in fact in line with that which has, in previous cases, been approved," and "[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arm's length negotiations with their clients." *Id.* at 26–27. Notably, the Northern District has recognized the appropriateness of a fee of nearly 1/3 of the common fund in complex litigation and the historic approval of such fees in the Seventh Circuit. See *also Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *In re Lithotripsy Antitrust Litig.,* 2000 U.S.Dist. LEXIS 8143, **6-7 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards in class-action antitrust lawsuits."); *In re Spyglass, Inc. Sec. Litig.,* No. 99-c-5 12 (N.D. Ill. March 24, 2000) and *In re Spyglass, Inc. Sec. Litig.,* No. 99-cv-0512 (N.D. Ill. May 31, 2000) (33% fee award approved); *Rehm v. Eagel Fin. Corp.,* 1998 U.S. Dist. LEXIS 20015 (N.D. Ill. Dec. 8, 1998) (approving 33.3% fee request), *aff'd Rehm v. EagelFin. Corp.,* No. 96-2455 (N.D. Ill. Dec. 8, 1998) ("the 7th Circuit Court of Appeals, as well as the majority of other circuit courts have approved the use of the percentage of the fund method to award attorneys' fees in class action/common fund cases"); *Taubenfeld*, 415 F.3d at 598 (7th Cir. 2005) (affirming fee award of 33.3%). *Gaskill*, 942 F. Supp. 382, *aff'd* 160 F. 3d 361 (7th Cir. 1998) (38% awarded); *In Re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, Case No. 05 CV 07097 (N.D. Ill. 2010) ( Awarded $7.33 million for attorney fees, which is 33% of the common fund); *See also Appendix 3*, Chart of Securities Class Actions awarding fees of 33.3% of the Settlement Fund.

The requested fee is similar to fees awarded by district courts in TCPA class actions. *Saf-T-*

12

*Gard v Seiko,* 09 C 776 (N.D. *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) (Awarding 33% of the common fund); *Hinman v. M and M Rental Center* Inc., 06-cv-01156, Doc. 225(N.D. Ill. 2008) (Awarded 33% of the common fund plus costs); *CE Design, Ltd. v. Cy's Crabhouse,* 07 C 5456 (N.D. Ill.) (Kennelly, J.) (N.D. Ill. Sept. 22, 2010) (Awarded 33% of the common fund plus costs. Doc. 373); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Awarded 33% of the common fund plus costs. Doc. 33);*CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Awarded 33% of the common fund plus costs. Doc. 32-2); *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill.) (Reagan, J.) (Awarded 33% of the common fund plus costs. Doc. 67) *Accounting Outsourcing, LLC. v Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (Awarded $2,314, 328, which is in excess of 35% of the common fund, plus costs); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) (Awarded $3,931,035.62, which was 33% of the common fund plus costs).

The market based percentage approach supports the reasonableness of this request.

**No Class Member Objected to the Attorneys' Fees and Expenses Requested**

As noted above, no objections to counsel fees and costs were filed. Doc 61. Based on the foregoing, the Court should grant Class Plaintiff's request for attorneys' fees (inclusive of expenses) in the amount $19,635.00.

## VII. THE COURT SHOULD ALSO APPROVE THE REQUESTED SERVICE AWARD

Class Counsel requests that the Court approve service awards in the amount of $5,000 for plaintiff, which is paid separate from the amount made available to the class.

The Notice informed the Class of this request and no objections to proposed service awards

13

were received. Courts have approved service awards on the basis that Named Plaintiffs in class actions take risks and perform services for the benefit of the Class. *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *In re Cont'l I*, 962 F. 2d 571. Since *In re Cont'l I*, service awards for named plaintiffs in class actions have been regularly granted and upheld in this Circuit. *See Cook,* 142 F. 3d 1016 (7th Cir. 1998); *Saf-T-Gard v Seiko,* 09 C 776 (N.D. *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) ($12,500 to named plaintiff in TCPA class); *In Re Ameriquest Mortgage Co.* at ¶12. (Awarded service payments of $7,500 to each of the 87 named plaintiffs.); *Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.*, 06-cv-05849-PSG-PLA Document 212 (C.D. Ca. 2009) ($15,000 to the named plaintiff for service payment in TCPA class settlement)*; Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) ($15,000 to the named plaintiff in a TCPA class action for service payment).

In fact the Seventh Circuit was recently critical of a $7,500.00 incentive award in a TCPA case as being too small. In *Ira Holtzman , C.P.A, & Associates Ltd. v Turza,* 11-3188 (7th Cir. August 26, 2013) the court described the award as a disincentive award. p.14.

Plaintiff invested time and energy working with counsel. For its willingness to continue to represent the Class in such circumstances and for its ultimately fruitful efforts on behalf of the Class, plaintiff has earned the requested service award.

Finally, any reduction in the service award would not benefit the class as defendant is paying the incentive fee in addition to any payment to the class members and if it is reduced defendant

would retain the difference.

## VIII. CONCLUSION

For all the reasons set forth above, Plaintiff individually, and as representative of the Class, by Class Counsel, request that this Honorable Court grant final approval of the Agreement and enter the proposed final approval order attached hereto as *Appendix 2*.

Respectfully submitted,

/s/ Keith J. Keogh

Keith J. Keogh
Timothy Sostrin
Katherine Bowen
KEOGH LAW, LTD.
55 W. Monroe, Suite 3390
Chicago, IL 60603
(312) 726-1092/(312) 726-1093 (fax)
Keith@Keoghlaw.com

## CERTIFICATE OF SERVICE

I, Keith J. Keogh, hereby certify that on October 11, 2013, I filed the foregoing documents with the Clerk of the Court using the CM/ECF System, which sent notification of such filing via electronic mail to all parties of record.

/s/ Keith J. Keogh